**OPINION OF THE JUSTICES of the Supreme Judicial Court Given Under the Provisions of Section 3 of Article VI of the Constitution.**

Questions Propounded by the House in an Order Dated May 4, 1973 and Passed May 7, 1973 and Submitted and Delivered to the Court on June 21, 1973. Answered June 22, 1973.

Supreme Judicial Court of Maine.

June 26, 1973.

---

## ANSWERS OF THE JUSTICES

To the Honorable House of Representatives of the State of Maine:

In compliance with the provisions of Section 3 of Article VI of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit the following answers to the questions submitted and delivered to the Court on June 21, 1973.

■ The questions themselves, as submitted, seek to test the validity of provisions of the Maine Constitution against those of the Constitution of the United States. Thereby, they recognize, correctly, that the federal Constitution is controlling over Constitutions of the various States by virtue of Article VI, Clause 2 of the Constitution of the United States which provides:

"This Constitution . . . shall be the supreme Law of the Land; and Judges in every State shall be bound thereby, anything in the Constitution . . . of any State to the Contrary notwithstanding."

Florida v. Mellon, 273 U.S. 12, 47 S.Ct. 265, 71 L.Ed. 511 (1927).

In the interests of conciseness and clarity we answer the questions inversely to the order in which they were propounded.

■■ QUESTION NO. VII: Whether the proposed plan for reapportionment of the House of Representatives, H.P. 472, L. D. 984, hereto annexed, is permissible under the Equal Protection Clause of the 14th Amendment to the Constitution of the United States or the Equal Protection Clause of Article I, Section 6–A of the Constitution of Maine?

ANSWER: We answer in the negative.

The most recent pronouncement of the Supreme Court of the United States in the case of Mahan v. Howell, 410 U.S. 315, 93 S.Ct. 979, 35 L.Ed.2d 320 (1973) reaffirmed two principles derived from the "equal protection of the laws" clause of the federal Fourteenth Amendment in specific application to reapportionment of houses of a bicameral state legislature: (1)

" 'that a State make an honest and good faith effort to construct districts, . . .

as nearly of equal population as is practicable . . .' "

and (2)

" '[s]o long as the divergences from a strict population standard are based on legitimate considerations incident to the effectuation of a rational state policy, some deviations from the equal-population principle are constitutionally permissible with respect to the apportionment of seats in either or both of the two houses of a bicameral state legislature.' " (p. 985 of 93 S.Ct.)

Mahan v. Howell decided, further, that a "policy of maintaining the integrity of political subdivision lines in the process of reapportioning a state legislature, . . . is a rational one" (p. 987 of 93 S.Ct.)

since it furthers the purpose of facilitating enactment of statutes of purely local concern and preserves for voters in the political subdivision a voice in the State Legislature on local matters.

Hence, preservation of the integrity of political subdivision lines may serve as a justification, consistently with mandates of the "equal protection of the laws" clause of the federal Fourteenth Amendment, for "deviations from the equal population principle" provided that the divergences are within limits recognized as constitutionally tolerable.

As to the range of deviation which will pass constitutional muster, Mahan v. Howell stated that a ". . . 16-odd percent maximum deviation . . . may well approach tolerable limits." The Court added, however: "we do not believe it exceeds them", thus rendering suspect any appreciable excess as an unjustifiable "sacrifice" of "substantial equality."

Measured by this most recent interpretation of the requirements of the "equal protection of the laws" clause of the federal Constitution, the proposed plan for reapportionment of the House of Representatives, H.P. 472, L.D. 984, must be considered to violate the Constitution of the United States.

The plan proposed by H.P. 472, L.D. 984, clearly "sacrifices substantial equality" because it attempts to preserve traditional political subdivisions as mandated by Article IV, Part First, Sections 2 and 3 of the Constitution of Maine.

According to the report of the House Apportionment Commission, the maximum percentage variation from the ideal district is 94.02%. The extreme deviations from the ideal in the proposed legislation result in one district being 67.57% under represented and another being 26.45% over represented. The majority report of the Commission, moreover, states that an attempt was made

"to create districts as close to population equality as practicable under the present constitutional formula."

Although the United States Supreme Court in Mahan v. Howell did not establish 16.04% maximum percentage variation as an absolute standard for determining the constitutionality of state reapportionment plans, it is apparent the 94.02% maximum percentage variation of the plan proposed by H.P. 472, L.D. 984, goes far beyond constitutionally tolerable limits of deviation.

■ QUESTION NO. VI: In general, whether the method of reapportionment prescribed by the provision of Article IV, Part I, Sections 2 and 3 of the Constitution of Maine is permissible under the Equal Protection Clause of the 14th Amendment to the Constitution of the United States or the Equal Protection Clause of Article I, Section 6–A of the Constitution of Maine?

ANSWER: We answer this question in the negative.

Accepting the Commission's conclusion that it came as close to substantial equality as was possible under the provisions of the Maine Constitution, Article IV, Part 1, Sections 2 and 3, it is apparent that, with-

in the foreseeable future, no plan could be devised in accordance with the present Maine constitutional provisions which would not be violative of the equal protection clause of the Fourteenth Amendment of the Constitution of the United States.

■ QUESTION NO. V: Whether forming multi-member districts composed of more than one municipality, as proscribed by the provisions of Article IV, Part First, Sections 2 and 3 of the Constitution of Maine, is permissible under the Equal Protection Clause of the 14th Amendment to the Constitution of the United States or the Equal Protection Clause of Article I, Section 6–A of the Constitution of Maine?

ANSWER: We answer in the affirmative—subject to the qualification, however, that even though Fortson v. Dorsey, 379 U.S. 433, 85 S.Ct. 498, 13 L.Ed.2d 401 (1965) establishes that a multi-member constituency apportionment is not per se a violation of "equal protection of the laws" mandates, it may become constitutionally infirm by an application in a particular instance which produces deviations from "substantial equality" beyond the range of constitutional tolerance indicated in Mahan v. Howell, supra.

■ QUESTION NO. IV: Whether that portion of the reapportionment as it relates to giving additional Representatives from the remaining County Representatives unallocated under the foregoing procedure shall be allocated to municipalities having the largest fraction remaining as prescribed by Article IV, Part First, Section 3 of the Constitution of Maine is permissible under the E.P.C. of the 14th Amendment to the Constitution of the United States or the E.P.C. of Article I, Section 6–A of the Constitution of Maine?

ANSWER: We answer in the affirmative—subject to the qualification, however, that even though the procedure specified by Article IV, Part First, Section 3, of the Constitution of Maine, as referred to in

Question No. IV, may be a reasonable implementation of a rational State policy of maintaining the integrity of political subdivision lines, it may become constitutionally infirm by an application in a particular instance which produces deviations from "substantial equality" beyond the range of constitutional tolerance indicated in Mahan v. Howell, supra.

■ QUESTION NO. III: Whether that portion of the reapportionment as it relates to a district containing fewer inhabitants than the largest fraction remaining to any municipality within such county after allocating of one or more Representatives to municipalities entitled to one or more Representatives as prescribed by Article IV, Part First, Section 3 of the Constitution of Maine is permissible under the E.P.C. of the 14th Amendment to the Constitution of the United States or the E.P.C. of Article I, Section 6–A of the Constitution of Maine?

ANSWER: We answer in the affirmative—subject to the qualification, however, that even though the procedure specified by Article IV, Part First, Section 3, of the Constitution of Maine, as referred to in Question No. III, may be a reasonable implementation of a rational State policy of maintaining the integrity of political subdivision lines, it may become constitutionally infirm by an application in a particular instance which produces deviations from "substantial equality" beyond the range of constitutional tolerance indicated in Mahan v. Howell, supra.

■ QUESTION NO. II: Whether that portion of the reapportionment as it relates to fractional excesses over whole numbers to be computed in favor of the counties having larger fractional excesses as prescribed by Article IV, Part First, Section 2 of the Constitution of Maine is permissible under the E.P.C. of the 14th Amendment to the Constitution of the United States or the E.P.C. of Article I, Section 6–A of the Constitution of Maine?

ANSWER: We answer in the affirmative—subject to the qualification, however, that even though the procedure specified by Article IV, Part First, Section 2 of the Constitution of Maine, as referred to in Question No. II, may be a reasonable implementation of a rational State policy of maintaining the integrity of political subdivision lines, it may become constitutionally infirm by an application in a particular instance which produces deviations from "substantial equality" beyond the range of constitutional tolerance indicated in Mahan v. Howell, supra.

■ QUESTION NO. I: Whether the method of reapportionment as it relates to keeping representative districts within counties and whole municipalities as prescribed by Article IV, Part First, Sections 2 and 3 of the Constitution of Maine is permissible under the E.P.C. of the 14th Amendment to the Constitution of the United States or the E.P.C. of Article I, Section 6-A of the Constitution of Maine?

ANSWER: We answer in the affirmative—subject, however, to the qualification that even though the policy of "keeping representative districts within counties and whole municipalities as prescribed by Article IV, Part First, Sections 2 and 3 of the Constitution of Maine" is a rational State interest which may justify deviations from substantial population equality, by its application in a particular instance it may become unconstitutional, as a violation of the "equal protection of the laws" clause of the federal Fourteenth Amendment, should it produce deviations from substantial population equality in excess of the limits of constitutional tolerance indicated in Mahan v. Howell, supra.

While we have answered Question No. I in the affirmative with qualification, the House Apportionment Commission's Report demonstrates that a constitutionally permissible reapportionment of the House of Representatives is unattainable as a practical matter in the foreseeable future so long as "the method of reapportionment as it relates to keeping representative districts within counties and whole municipalities as prescribed by Article IV, Part First, Sections 2 and 3 of the Constitution of Maine" remains in effect.

Dated at Portland, Maine, this twenty-second day of June, 1973.

Respectfully submitted:

ARMAND A. DUFRESNE, Jr.

DONALD W. WEBBER

RANDOLPH A. WEATHERBEE

CHARLES A. POMEROY

SIDNEY W. WERNICK

JAMES P. ARCHIBALD