**In re 1983 LEGISLATIVE APPORTION-
MENT OF HOUSE, SENATE, AND
CONGRESSIONAL DISTRICTS.**

Supreme Judicial Court of Maine.

Argued Oct. 17, 1983.

Decided Dec. 9, 1983.

Peter Adams Anderson (orally), Anderson, Merrill, Norton & Relyea, Bangor, David M. Sanders (orally), Rowe & Sanders, Livermore Falls, for petitioners.

Harriet Lewis Robinson, pro se.

William R. Stokes (orally), Asst. Atty. Gen., Anthony W. Buxton (orally), Augusta, for respondents.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

## OPINION AND ORDER

This original proceeding brought directly before the Supreme Judicial Court challenges the constitutionality of the plans enacted by the 1983 Legislature for the apportionment of election districts for the Maine House of Representatives and the Maine Senate.[1] Pursuant to Me. Const. art. IV, pt. 1, § 3; art. IV, pt. 2, § 2, the Supreme Judicial Court is asked to declare that the legislatively enacted districting, chapter 93 of the Public Laws of 1983,[2] is unconstitutional and then to make the necessary apportionment. On the basis of the evidence presented to the court and of the legal principles here applicable, we find that chapter 93 complies with both the state and federal constitutions.

By a petition filed July 29, 1983, a group of citizens identifying itself as Citizens for Constitutional Apportionment sought to invoke the original jurisdiction of the Supreme Judicial Court to challenge the validity of the apportionment law under the state and federal constitutions. On August 19, 1983, an amended petition was filed by Citizens for Constitutional Apportionment, identifying several of its members and naming an individual citizen, Walter E. Birt, as a petitioner. The Department of the Attorney General filed an initial response on August 5, 1983, and on August 29, 1983, filed an answer to petitioners' amended petition. Two members of the House of Representatives, Darryl N. Brown and Harriet Lewis Robinson, subsequently intervened as petitioners, making further challenges to the apportionment plans enacted for the House of Representatives.

The Maine Democratic State Committee and its chairman, Barry J. Hobbins, and Representative Edward C. Kelleher intervened as respondents.[3] By agreement of the parties, the matter was submitted to us on a record consisting solely of affidavits, maps, and other written materials. After receiving extensive briefs from all parties, the Supreme Judicial Court, sitting *en banc* on October 17, 1983, heard oral argument on issues of both fact and law.

The provisions of the constitution that currently govern the reapportionment process were adopted in 1975[4] after unsuccessful efforts by the Legislature to reapportion the Maine House of Representatives and Senate. In each instance, this court was called upon to make the apportionment. *See In re Apportionment of House of Representatives,* 315 A.2d 211, *amended,* 316 A.2d 508 (Me.1974); *Opinion of the Justices,* 307 A.2d 198 (Me.1973); *In re Apportionment of Senate,* 287 A.2d 421 (Me.1972); *Opinion of the Justices,* 283 A.2d 234 (Me. 1971). The 1975 amendment provided for creation of a bipartisan commission to advise the Legislature on reapportionment, and also provided new substantive standards to guide the commission and the Legislature in formulating apportionment plans. Me. Const. art. IV, pt. 1, §§ 2, 3; art. IV, pt. 2, § 2; art. IV, pt. 3, § 1–A. Under the present constitutional scheme, the Legislature that convenes in 1983 and every tenth year thereafter is required, within three days of convening, to establish a bipartisan apportionment commission in accordance with the standards set forth in Me. Const. art. IV, pt. 3, § 1–A.[5] The

1. Prior to oral argument, petitioners abandoned the claim, raised in both the original and amended petitions, that the enacted reapportionment plan for the districts for the United States House of Representatives fails to meet constitutional standards.

2. P.L.1983, ch. 93, *amended by* P.L.1983, ch. 583 (hereafter referred to as "chapter 93").

3. Unless otherwise indicated, the terms "petitioners" and "respondents" refer to the parties intervening on each side as well as the original parties to this action.

4. *See* Const.Res.1975, ch. 1; art. CXXVI (1975).

5. Me. Const. art. IV, pt. 3, § 1–A, reads as follows:

A Legislature which is required to apportion the districts of the House of Representatives or the Senate, or both, under Article IV, Part First, Section 2, or Article IV, Part Second, Section 2, shall establish, within the first three calendar days after the convening of that Legislature, a commission to develop in accordance with the requirements of this Constitution, a plan for apportioning the House of Representatives, the Senate or both.

constitution requires the commission to submit plans to the Legislature for the apportionment of the House of Representatives and the Senate within 90 days of the Legislature's convening. Me. Const. art. IV, pt. 1, § 3; art. IV, pt. 2, § 2.[6] The Legislature has thirty days to enact either the plan submitted by the commission or a plan of

The commission shall be composed of three members from the political party holding the largest number of seats in the House of Representatives, who shall be appointed by the Speaker; three members from the political party holding the majority of the remainder of the seats in the House of Representatives, who shall be appointed by the floor leader of that party in the House; two members of the party holding the largest number of seats in the Senate, who shall be appointed by the President of the Senate; two members of the political party holding the majority of the remainder of the seats in the Senate, to be appointed by the floor leader of that party in the Senate; the chairperson of each of the two major political parties in the State or their designated representatives; and three members from the public generally, one to be selected by each group of members of the commission representing the same political party, and the third to be selected by the other two public members. The Speaker of the House shall be responsible for organizing the commission and shall be chairman pro tempore thereof until a permanent chairman is selected by the commission members from among their own number. No action shall be taken without a quorum of seven being present. The commission shall hold public hearings on any plan for apportionment prior to submitting such plan to the Legislature.

Public members of the commission shall receive compensation, as provided by law. All members of the commission shall be reimbursed for actual travel expenses incurred in carrying out the business of the commission. The Legislature which is required to apportion shall appropriate sufficient funds to compensate public members, to provide staff assistance to the commission, to provide travel expenses for all members and to provide for incidental expenses of the commission as needed to carry out its duties under this Constitution.

6. Me. Const. art. IV, pt. 1, § 3, provides:

The apportionment plan of the commission established under Article IV, Part Third, Section 1–A shall be submitted to the Clerk of the House no later than ninety calendar days after the convening of the Legislature in which apportionment is required. The Legislature shall enact the submitted plan of the commission or a plan of its own by a vote of two-thirds of the Members of each House within thirty calendar days after the plan of the commission is submitted. Such action shall be subject to the Governor's approval as provided in Article IV, Part Third, Section 2.

In the event that the Legislature shall fail to make an apportionment within one hundred and thirty calendar days after convening, the Supreme Judicial Court shall, within sixty days following the period in which the Legislature is required to act, but fails to do so, make the apportionment. In making such apportionment, the Supreme Judicial Court shall take into consideration plans and briefs filed by the public with the court during the first thirty days of the period in which the court is required to apportion.

The Supreme Judicial Court shall have original jurisdiction to hear any challenge to an apportionment law enacted by the Legislature, as registered by any citizen or group thereof. If any challenge is sustained, the Supreme Judicial Court shall make the apportionment.

Me. Const. art. IV, pt. 2, § 2 provides:

The Legislature which shall convene in 1983 and every tenth year thereafter shall cause the State to be divided into districts for the choice of a Senator from each district, using the same method as provided in Article IV, Part First, Section 2 for apportionment of Representative Districts.

The apportionment plan of the commission established under Article IV, Part Third, Section 1–A shall be submitted to the Secretary of the Senate no later than ninety calendar days after the convening of the Legislature in which apportionment is required. The Legislature shall enact the submitted plan of the commission or a plan of its own by a vote of two-thirds of the Members of each House, within thirty calendar days after the plan of the commission is submitted. Such action shall be subject to the Governor's approval as provided in Article IV, Part Third, Section 2.

In the event that the Legislature shall fail to make an apportionment within one hundred and thirty days after convening, the Supreme Judicial Court shall, within sixty days following the period in which the Legislature is required to act but fails to do so, make the apportionment. In making such apportionment, the Supreme Judicial Court shall take into consideration plans and briefs filed by the public with the court during the first thirty days of the period in which the court is required to apportion.

The Supreme Judicial Court shall have original jurisdiction to hear any challenge to an apportionment law enacted by the Legislature, as registered by any citizen or group thereof. If any challenge is sustained, the Supreme Judicial court shall make the apportionment.

its own. If a plan is enacted, the Supreme Judicial Court has original jurisdiction "to hear any challenge" to the apportionment law "as registered by any citizen or group thereof." *Id.* If the Legislature fails to enact a plan within the constitutional time limit, or if a challenge to an enacted plan is sustained, this court must make the apportionment.

In accordance with these provisions, the Maine Apportionment Commission was established in December, 1982. After holding public hearings, the commission submitted reapportionment plans for the Maine House of Representatives, the Maine Senate, and the United States Congress on March 1, 1983, before the constitutional deadline. Within a week of the submission of the plans, an error was discovered in the apportionment of the districts for the Maine House of Representatives. On March 7, 1983, a revised plan was submitted to the Legislature by the chairman of the commission. Plans substantially similar to those submitted by the commission were enacted by the Legislature as P.L.1983, ch. 93, on March 30, 1983, and signed into law by the Governor on March 31.

Petitioners base their challenge to chapter 93 both on the alleged failure of the Legislature and the commission to comply with certain procedural requirements that petitioners claim are imposed by the state constitution and on the alleged failure of the law itself to comply with the substantive criteria imposed by the state and federal constitutions. Petitioners' original and amended petitions contained three counts asserting that: (1) the apportionment law is unconstitutional under Me. Const. art. IV, pt. 3, § 1–A because it enacts apportionment plans produced by a commission in which the Democratic members received substantially more funding than was provided to the Republican members; (2) the apportionment law is unconstitutional because the House apportionment plan originally filed by the commission within the constitutional deadline contained a substantial error and the corrected plan was filed by the commission after the constitutional deadline and without the benefit of a public hearing, in violation of Me. Const. art. IV, pt. 1, § 3; art. IV, pt. 2, § 2; art. IV, pt. 3, § 1–A; and (3) the enacted apportionment plans for the House and Senate are unconstitutional because they fail to adhere to the substantive standards imposed by the fourteenth amendment to the United States Constitution and by Me. Const. art. IV, pt. 1, § 2; art. IV, pt. 2, § 2.[7]

## I. *Standing*

■ Before discussing the merits of each of these claims, we must address the con-

---

7. Me. Const. art. IV, pt. 1, § 2, incorporated by reference in Me. Const. art. IV, pt. 2, § 2, provides:

The House of Representatives shall consist of one hundred and fifty-one members, to be elected by the qualified electors, and hold their office two years from the day next preceding the first Wednesday in December following the general election. The Legislature which shall convene after the adoption of this amendment shall cause the multi-member districts of the House of Representatives to be divided into districts for the choice of one Representative for each district, dividing contiguous districts the least number of times necessary to establish as nearly as practicable equally populated districts. The Legislature which convenes in 1983 and every tenth year thereafter shall cause the State to be divided into districts for the choice of one Representative for each district. The number of Representatives shall be divided into

the number of inhabitants of the State exclusive of foreigners not naturalized according to the latest Federal Decennial Census, or a State Census previously ordered by the Legislature to coincide with the Federal Decennial Census, to determine a median population figure for each Representative District. Each Representative District shall be formed of contiguous and compact territory and shall cross political subdivision lines the least number of times necessary to establish as nearly as practicable equally populated districts. Whenever the population of a municipality entitles it to more than one district, all whole districts shall be drawn within municipal boundaries. Any population remainder within the municipality shall be included in a district drawn to cross the municipal boundary, provided that such population remainder of the municipality must be contiguous to another municipality or municipalities included in the district.

tention, raised by respondents other than the Department of the Attorney General, that petitioners lack standing to bring the instant action. We disagree. The drafters of the 1975 constitutional amendment painted with a broad brush in providing that "[t]he Supreme Judicial Court shall have original jurisdiction to hear *any* challenge to an apportionment law enacted by the Legislature, as registered by *any* citizen or group thereof." Me. Const. art. IV, pt. 1, § 3, art. IV, pt. 2, § 2 (emphasis added). We read the constitutional language as sufficient, without more, to give any citizen standing to challenge an apportionment law enacted by the Legislature. The reapportionment process entails the right of *every* citizen to be governed by a Legislature that is duly elected by the people.

■ A challenge to the House or Senate reapportionment plan implicates the integrity of future elections of the entire body. In such circumstances, the constitutional draftsmen had a good reason for giving any citizen or group thereof the power to trigger judicial scrutiny of the legislative apportionment rather than limiting that power to a citizen who could show that his vote would be diluted or to a candidate who could show that his subsequent public service would be made more difficult by the alleged constitutional shortcomings of the enacted plan. The danger of frivolous challenges to reapportionment laws—which in any event are enacted only at ten-year intervals—is by no means serious enough to compel this court to put a restrictive gloss on the unrestricted words of the Maine Constitution. Rather, we give those words their plain meaning. Any citizen may go to court to challenge legislatively adopted apportionment plans. Of course, the Supreme Judicial Court will not get into the business of itself making the reapportionment until and unless it has been proved that the Legislature's plan is constitutionally defective.

## II. *Pre-enactment Procedural Defects*

■ The first two counts of the petition are based not upon any substantive consti-

tutional insufficiency in the enacted reapportionment plans, but rather upon the alleged failure of the Legislature and the reapportionment commission to comply with certain procedures that petitioners claim are mandated by the Maine Constitution. Petitioners assert that the reapportionment law is rendered invalid by unequal funding of the two political parties represented on the reapportionment commission and by failure of the commission to comply with constitutional deadlines and hearing requirements. We, however, do not reach the merits of these arguments, which are based upon alleged procedural defects in the functioning of the commission, for the reason that these "challenges" do not fall within the scope of the constitutional proceeding now before the Supreme Judicial Court. The constitutional provisions (Me. Const. art. IV, pt. 1, § 3; art. IV, pt. 2, § 2) require that the Supreme Judicial Court decide challenges "to an apportionment law enacted by the Legislature." This language should be read narrowly in light of the fact that the purpose for this special proceeding is for the Supreme Judicial Court to determine whether it must itself make the apportionment. "If any challenge is sustained, the Supreme Judicial Court shall make the apportionment." Me. Const. art. IV, pt. 1, § 3; art. IV, pt. 2, § 2. We therefore limit our review of chapter 93 to consideration of challenges to the substantive constitutionality under state and federal law of the apportionment plans actually enacted by the Legislature. We do not comment on what, if any, remedies might otherwise be available to parties aggrieved by a failure to comply with the procedural provisions of the Maine Constitution during the operation of the reapportionment commission or the pendency of the matter before the Legislature.

## III. *Constitutionality of Enacted Plans*

We now turn to petitioners' basic claim that the apportionment plans for the Maine Senate and House of Representatives are

unconstitutional under the federal and state constitutions.

## A. General Principles

### 1. Federal Constitution

■ The Equal Protection Clause of the federal constitution requires that the seats in both houses of a bicameral state legislature be apportioned on a population basis. A state must "make an honest and good faith effort to construct districts ... as nearly of equal population as is practicable." *Reynolds v. Sims,* 377 U.S. 533, 568, 577, 84 S.Ct. 1362, 1384, 1389, 12 L.Ed.2d 506 (1964). The Supreme Court of the United States has recognized, however, that honest and good faith efforts will not always result in absolute equality of population between districts. *De minimis* deviations are unavoidable. *See Swann v. Adams,* 385 U.S. 440, 444, 87 S.Ct. 569, 572, 17 L.Ed.2d 501 (1967). "Mathematical exactness or precision is hardly a workable constitutional requirement." *Reynolds v. Sims,* 377 U.S. at 577, 84 S.Ct. at 1390. Deviations from equality that go beyond even those that are unavoidable have been tolerated when they can be justified as the product of a rational state policy. *See Brown v. Thomson,* —— U.S. ——, ——, 103 S.Ct. 2690, 2695, 77 L.Ed.2d 214, 221 (1983); *Mahan v. Howell,* 410 U.S. 315, 325, 93 S.Ct. 979, 985, 35 L.Ed.2d 320 (1973); *Reynolds v. Sims,* 377 U.S. at 579, 84 S.Ct. at 1390. For example, the Court has recognized that deviations from equality are permissible where necessary to effectuate legitimate state policies such as maintaining the integrity of political subdivisions or providing for electoral districts of compact and contiguous territory. *Id.* at 578, 84 S.Ct. at 1390.

An unrealistic overemphasis on raw population figures, a mere nose count in the districts, may submerge these other considerations and itself furnish a ready tool for ignoring factors that in day-to-day operation are important to an acceptable representation and apportionment arrangement.

*Gaffney v. Cummings,* 412 U.S. 735, 749, 93 S.Ct. 2321, 2329, 37 L.Ed.2d 298 (1973).

■ In applying these principles, the Supreme Court has held, as a general matter,[8] that an aggregate deviation[9] of less than 10% in an apportionment plan is "insufficient to make out a prima facie case of invidious discrimination under the Fourteenth Amendment so as to require justification by the State." *Brown v. Thomson,* —— U.S. at ——, 103 S.Ct. at 2695–96, 77 L.Ed.2d at 221–22 (quoting *Gaffney v. Cummings,* 412 U.S. at 745, 93 S.Ct. at 2327). A plan with a larger aggregate deviation creates a prima facie case of discrimination that must be justified by the state. In the latter situation the reviewing court must inquire "whether the legislature's plan 'may reasonably be said to advance [a] rational state policy' and, if so, 'whether the population disparities among the districts that have resulted from the pursuit of this plan exceed constitutional limits'." *Brown v. Thomson,* —— U.S. at ——, 103 S.Ct. at 2696, 77 L.Ed.2d at 222 (quoting *Mahan v. Howell,* 410 U.S. at 328, 93 S.Ct. at 987). The Court has upheld apportionment plans containing aggregate deviations in excess of 10% where it has found those deviations to be the result of a state's rational objective of preserving the integrity of political subdivisions. *See Mahan v. Howell,* 410 U.S. at 319, 93 S.Ct. at 982 (aggregate deviation of 16.4%); *Abate v. Mundt,* 403 U.S. 182, 91 S.Ct. 1904, 29 L.Ed.2d 399 (1971) (aggregate deviation of

---

**8.** An apportionment plan with only minor deviations may still be invalid if it masks or is a result of impermissible discriminatory intent. *See Gaffney v. Cummings,* 412 U.S. at 751, 93 S.Ct. at 2330.

**9.** Aggregate deviation is the sum of the absolute values of the percentages by which the

populations of the most underrepresented district and the most overrepresented district vary from the population of the "ideal" district. The population of the "ideal" district is obtained by dividing the population of the state by the total number of districts to be created.

11.9%). Although the Court has set no outside bound on the amount of aggregate deviation that may be justified by a rational state policy, it has said that the 16.4% deviation present in *Mahan* "may well approach tolerable limits." *Mahan v. Howell,* 410 U.S. at 329, 93 S.Ct. at 987. *See Kilgarlin v. Hill,* 386 U.S. 120, 87 S.Ct. 820, 17 L.Ed.2d 771 (1967) (apportionment plan with aggregate deviation of 26.48% not justified by policy of preserving county lines); *Swann v. Adams,* 385 U.S. at 443–44, 87 S.Ct. at 571–72 (reapportionment plan with aggregate deviation of 25.65% for Senate districts and 33.55% for House districts unconstitutional where the state and the lower court failed to present acceptable reasons for the variation in population among districts).

### 2. *Maine Constitution*

 In addition to satisfying the standards of the fourteenth amendment, apportionment plans for the Senate and House must satisfy the standards of our state constitution, which requires:

> Each ... [d]istrict shall be formed of contiguous and compact territory and shall cross political subdivision lines the least number of times necessary to establish as nearly as practicable equally populated districts. Whenever the population of a municipality entitles it to more than one district, all whole districts shall be drawn within municipal boundaries. Any population remainder within the municipality shall be included in a district drawn to cross the municipal boundary, provided that such population remainder of the municipality must be contiguous to another municipality or municipalities included in the district.

Me. Const. art. IV, pt. 1, § 2; art. IV, pt. 2, § 2. To the extent they are not inconsistent with the United States Constitution, these Maine standards control the validity of the enacted apportionment plans. *In re Apportionment of House of Representatives,* 315 A.2d at 217, *amended,* 316 A.2d at 508 (Me.1974).

 As the facts present here amply demonstrate, however, full compliance with all of the standards imposed by the state constitution as well as the federal one-person, one-vote principle is a practical impossibility. The difficult task of making the compromises necessary to best effectuate state standards within the limitations imposed by federal law falls primarily upon the Legislature. The judgments that must be made are peculiarly legislative in character.

> [A] state legislature is the institution that is by far the best situated to identify and then reconcile traditional state policies within the constitutionally mandated framework of substantial population equality.

*Connor v. Finch,* 431 U.S. 407, 414–15, 97 S.Ct. 1828, 1833–34, 52 L.Ed.2d 465 (1977); *Assembly of California v. Deukmejian,* 30 Cal.3d 638, 658, 639 P.2d 934, 951, 180 Cal. Rptr. 297, 309 (1982); *In re Reapportionment of Colorado General Assembly,* Colo., 647 P.2d 191, 194, *appeal after remand,* Colo., 647 P.2d 209 (1982); *Logan v. O'Neill,* 187 Conn. 721, ——, 448 A.2d 1306, 1314 (1982). We shall not intervene in the apportionment process unless we are convinced that the Legislature failed to use proper judgment or was in fact motivated by impermissible discriminatory intent in making the compromises necessary to harmonize state and federal standards. *See Logan v. O'Neill,* 187 Conn. at ——, 448 A.2d at 1314–15. Since an apportionment law is entitled to the same presumption of validity as any other legislative enactment, it is incumbent upon petitioners to make the required showing. *Common Cause v. State,* 455 A.2d 1, 17 (Me.1983); *Orono-Veazie Water District v. Penobscot County Water Co.,* 348 A.2d 249, 253 (Me.1975).

### B. *Validity of the Senate Apportionment Plan*

#### 1. *Under the Federal Constitution*

 We turn first to the apportionment plan enacted by the Legislature for the Maine Senate. According to the 1980 fed-

eral census data that provided the basis for the apportionment of both the House and the Senate, the population of Maine was 1,125,030. The apportionment plan proposed a Senate of 35 members elected from single-member districts. The "ideal" senatorial district would therefore contain a population of 32,144 persons. The districts contained in the apportionment law range from a low of 30,550 to a high of 33,171, with deviations from the ideal of −4.959% and +3.194%, respectively, for an aggregate deviation of 8.153%. Because this aggregate deviation falls within the range considered to be *de minimis* under the federal constitution, and because petitioners make no allegation that the reapportionment of the senatorial districts results from any discriminatory intent, we conclude that petitioners have failed to establish a prima facie case under federal law with respect to the Senate plan.

### 2. *Under the Maine Constitution*

▋ Petitioners have also failed to carry their burden of proving that the Legislature fell short of exercising proper judgment in reconciling the standards of the Maine Constitution with the one-person, one-vote principle. Their claim in this regard is based chiefly upon the provision of the constitution that requires that districts "cross political subdivision lines the least number of times necessary to establish as nearly as practicable equally populated districts." Me. Const. art. IV, pt. 1, § 2; art. IV, pt. 2, § 2. In support of their contention, petitioners have presented an alternative plan for reapportionment of the Senate, which creates districts that cross county boundaries fewer times than does the enacted plan.

▋ A duly enacted apportionment plan is not rendered unconstitutional because some resourceful mind has come up with a "better" plan. *See Gaffney v. Cummings,* 412 U.S. at 750, 93 S.Ct. at 2330; *In re Reapportionment of Colorado General Assembly,* Colo. at 647 P.2d at 194; *Logan v. O'Neill,* 187 Conn. at ——, 448 A.2d at 1315.

The crucial question is not whether the Legislature enacted the best plan conceivable, but whether the plan that it did enact is constitutional. *See Logan v. O'Neill,* 187 Conn. at ——, 448 A.2d at 1315. Of course, to the extent that an alternative proposal is substantially better, it may cast doubt on whether the Legislature did in fact exercise proper judgment in formulating the plan adopted.

Under the enacted plan, the Senate districting creates fifteen senatorial districts with portions in two counties and four districts with portions in three counties. Petitioners' alternative plan creates eight districts with portions in two counties and one district with portions in three counties. The alternative plan provides this marginal improvement at the expense of a higher aggregate deviation, 9% for the alternative plan versus the 8.153% deviation in the enacted plan. A comparison of the two plans indicates only that in drawing up their plan, petitioners have made a different compromise than did the Legislature in harmonizing constitutional standards. Such a comparison not only fails to demonstrate that the Legislature exercised improper judgment, it fails even to cast doubt on the legitimacy of the compromises that the Legislature made. Furthermore, petitioners have failed to establish any superiority of their plan over the enacted plan in terms of compactness and contiguity, and the other constitutional criteria.

### C. *Validity of the House Apportionment Plan*

#### 1. *Under the Federal Constitution*

▋ The enacted apportionment plan for the House of Representatives creates the constitutionally mandated 151 districts. When this figure is divided into the state's population, a population of 7,451 is obtained for the "ideal" district. The House districts contained in the apportionment law range from a low of 6,936 to a high of 7,884, with deviation from the ideal of −6.91% and +5.81%, respectively, for an aggregate deviation of 12.72%. Because this aggregate

deviation exceeds the *de minimis* level established by federal law, the burden shifts to respondents to show that this deviation in the House districting is the product of the Legislature's implementation of a rational state policy. We find, however, that respondents have successfully carried that burden; they have established that this aggregate deviation "may reasonably be said to advance [the] rational state policy" of respecting municipal boundaries as required by the Maine Constitution. *Brown v. Thomson,* —— U.S. at ——, 103 S.Ct. at 2696, 77 L.Ed.2d at 222 (quoting *Mahan v. Howell,* 410 U.S. at 328, 93 S.Ct. at 987).

Apportioning House districts for the State of Maine is a difficult process. Through most of the state the smallest unit into which federal census data is divided is the enumeration district. In Maine, the average size of an enumeration district is 550 persons, but the actual population of enumeration districts ranges from 200 to over 2,000. Because the ideal House district contains only 7,451 persons, addition or subtraction of even an average enumeration district would create a substantial deviation. The inflexibility created by the available statistical data is compounded by Maine's peculiar geography and demography. The head of the Republican staff of the apportionment commission and a Democratic member of the commission who conducted the 1980 federal census for the southern half of Maine provided this court with a joint affidavit expressing the opinion, which is not rebutted by petitioners, that given the factors described above, it is extremely unlikely, if not impossible, that an apportionment plan could be created for the House with an aggregate deviation of less than 8% even if population equality was the only objective. Even in assessing apportionment plans for federal congressional districts, where population equality is the sole criterion of constitutionality, the Supreme Court has recognized that some deviation from equality may be unavoidable. *See Karcher v. Daggett,* —— U.S. ——, ——, 103 S.Ct. 2653, 2658, 77 L.Ed.2d 133, 140 (1983); *Kirkpatrick v. Preisler,* 394 U.S. 526, 531, 89 S.Ct. 1225, 1229, 22 L.Ed.2d 519 (1969). In assessing apportionment plans for state legislative bodies, the courts have recognized that greater deviations may be justified in electoral districts with relatively small populations. *See Abate v. Mundt,* 403 U.S. at 185, 91 S.Ct. at 1906; *Burns v. Gill,* 316 F.Supp. 1285, 1298 (D.Hawaii 1970).

■ In attempting to hold aggregate deviation within tolerable limits and at the same time give meaning to the provision of the state constitution that requires districts to "cross political subdivisions lines the least number of times necessary," the reapportionment plan adopted by the Legislature reflected a judgment that the preservation of city and town boundaries was of greater importance than preservation of county boundaries. Respondents present three justifications for that judgment: (1) the strict adherence to county boundaries required by the Maine Constitution prior to 1975 has been removed; [10] (2) cities and towns, unlike counties, enjoy home rule; [11] and (3) elections are conducted on a municipal basis, not a county basis.[12] We find the judgment reflected in chapter 93 to be not only a rational one, but also one that is peculiarly legislative in character and therefore worthy of judicial deference. *See In re Reapportionment of Colorado General Assembly,* Colo., 647 P.2d at 197; *Logan v. O'Neill,* 187 Conn. at ——, 448 A.2d at 1314.

The apportionment plan enacted by the Legislature creates seven districts that divide towns of less than ideal size.[13] It also

---

10. *See* Me. Const. art. IV, pt. 1, § 3 (amended 1975). *See also In re Apportionment of House of Representatives,* 315 A.2d 211, *amended,* 316 A.2d 508 (Me.1974); *Opinion of the Justices,* 307 A.2d 198 (Me.1973).

11. Me. Const. art. VIII, pt. 2, § 1; 30 M.R.S.A. §§ 1911–1920 (1978 & Supp.1982–1983).

12. Me. Const. art. IX, § 12; 21 M.R.S.A. § 1 *et seq.*

13. Towns and cities that are greater than "ideal" size must by necessity be divided unless their population is approximately divisible by the population of the "ideal" district. Both the

creates twenty-five districts with portions in two counties and three districts with portions in three counties. Respondents have provided us with a district-by-district analysis of the decisions that were made in apportioning the House districts. Our review of this analysis convinces us that the state constitutional policy of preserving municipal boundaries was applied properly and in good faith; towns were divided only where required by the one-person, one-vote principle or state constitutional standards. We do not reproduce this lengthy district-by-district analysis here; we do note that both the most underrepresented and the most overrepresented House districts involve no town boundary crossings. Although the aggregate deviation in the House apportionment exceeds the federal *de minimis* limit, respondents have established to our satisfaction that this deviation "may reasonably be said to advance the rational state policy of respecting" municipal boundaries whenever possible. *Mahan v. Howell,* 410 U.S. at 328, 93 S.Ct. at 987. Respondents' district-by-district analysis also shows that other state constitutional requirements, including the requirement that districts be formed of compact and contiguous territory and the requirement [14] that—in towns or cities of greater than ideal size—whole districts be drawn within municipal boundaries, were applied properly and in good faith.

Nor is respondents' showing undercut by petitioners' proposed alternative plan. While that plan creates an aggregate deviation of 9.9%, less than the *de minimis* limit, and creates only eight districts with portions in two counties and none with portions in three counties, it divides *sixteen* towns of

less than "ideal" size, as compared with only *seven* in the enacted House plan. This alternative proposal indicates only that petitioners made different judgmental decisions than did the Legislature; it does not prove the invalidity of the decisions that the Legislature made. Neither does it indicate that the aggregate deviation created by the enacted plan was not the product of the Legislature's implementation of rational state policy declared by the Maine Constitution.

### 2. Under the Maine Constitution

Under state law, the burden always rests upon the citizens challenging an enacted apportionment plan to prove that it does not satisfy the requirements of the state constitution. Here petitioners fail to carry that burden. As we have already discussed, the Legislature had a reasonable basis for its decision to accord greater weight to municipal lines than county lines. Furthermore, we already have stated that we find nothing clearly unreasonable in the judgmental decisions made by the Legislature to accommodate the state constitutional policy of preserving municipal lines with the equal population standard, a standard imposed by the Maine Constitution as well as by the federal. Finally, neither petitioners' alternative House plan nor the other evidence presented by them demonstrates any infirmity of constitutional dimension in the enacted House plan as a whole, under either the compact-and-contiguous or the "whole district" rule.[15]

Intervening petitioners Darryl Brown and Harriet Lewis Robinson rely on those latter two state constitutional rules to challenge the reapportionment of the specific

enacted plan and the alternative plan proposed by petitioners create districts crossing boundaries of those municipalities.

14. This requirement, which is called the "whole district" rule, derives from the final two sentences of Me. Const. art. IV, pt. 1, § 2, reading as follows:

Whenever the population of a municipality entitles it to more than one district, all whole districts shall be drawn within municipal

boundaries. Any population remainder within the municipality shall be included in a district drawn to cross the municipal boundary, provided that such population remainder of the municipality must be contiguous to another municipality or municipalities included in the district.

*See* n. 7 above.

15. *See* n. 14 above.

districts they now represent in the House. Representative Brown asserts that his district under the enacted House plan (which is identified as district 58) violates the state compact-and-contiguous rule. That new district consists of the towns of Livermore Falls in Androscoggin County, Chesterville in Franklin County, and Belgrade, Rome, and Vienna in Kennebec County. He points out that district 58 is horseshoe-shaped, involving parts of three counties, and two of its five towns are contiguous only at a single point "in the woods."

 While we agree that district 58 may approach the limits of what is constitutionally permissible under the state compactness-and-contiguity test, that district does not of itself show that the Legislature exercised improper judgment in reconciling the several state constitutional requirements. The validity of the apportionment of one district cannot be judged in a vacuum. Any changes in district 58 would create a "ripple effect," impacting districts through much of the state. *See In re Reapportionment of Colorado General Assembly,* Colo., 647 P.2d at 196. In order to establish improper judgment on the part of the Legislature in apportioning district 58, a challenger at the very least must show that district 58 could be substantially improved without creating constitutional violations elsewhere in the state. The district proposed in lieu of district 58 in petitioners' alternative plan suffers from similar infirmities. It consists of an end-to-end alignment of four towns located in two counties, with two of those towns again contiguous only at the same single point "in the woods." Representative Brown offers us no other alternative that would improve the compactness and contiguity of his district without creating illogical results in other parts of the state. While the configuration of district 58 as enacted is unfortunate, we see no indication in this record that it, or a district substantially similar to it, is anything other than a product of the balancing process required by the Maine Constitution.

 Representative Harriet Lewis Robinson relies upon the "whole district" rule of the state constitution to challenge the validity of House districting in her home city of Auburn. She urges that the chapter 93 districting of that city violates the state constitutional requirement that in cities of greater than "ideal" size all whole districts be drawn within city limits and any remaining population be placed in a single district crossing municipal lines. *See* n. 14 above. Auburn has a population of 23,130, entitling it to three whole districts of approximately ideal size and one remainder district. Chapter 93, however, creates three whole districts and two remainder districts. Representative Robinson has offered an alternative proposal that would divide Auburn into three whole districts, each with a population of slightly more than "ideal" size. Although she has provided this court with a map of the City of Auburn delineating the three districts she proposes, she has presented no evidence that her alternative districting is in fact possible, given the constraints imposed by the federal census data. Furthermore, she has made no showing that her alternative districting could be implemented without a "ripple effect," creating substantial violations elsewhere in the state.

### D. Conclusion

The Legislature is not obligated to adopt the best apportionment plans conceivable, but only ones that comply with both the federal and the state constitutions. Our review of the enacted apportionment plans for the Senate and the House of Representatives convinces us that, while both are less than perfect, they are the product of legitimate judgmental choices made by the Legislature in its attempt to harmonize the standards imposed by the state and federal constitutions. Petitioners have failed to show that the Legislature used improper judgment in the choices that it made.

IT IS ORDERED that the challenges to P.L.1983, ch. 93, *amended by* P.L.1983, ch. 583, be, and they hereby are, denied.